UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────────

JAMES THOMAS,

                              Plaintiff,                        19-CV-6915-FPG

v.

                                                                          DECISION AND ORDER

T. WOOD, et al.,

                              Defendants.
───────────────────────────────────

## INTRODUCTION

Plaintiff filed this action on December 23, 2019, asserting claims under both the Eighth and Fourteenth Amendments. ECF No. 1. On February 5, 2020, Plaintiff filed an Amended Complaint. ECF No. 10. On March 31, 2020, the Court entered an Order indicating that both Plaintiff's initial Complaint and Amended Complaint were active pleadings, but the Court dismissed Plaintiff's Fourteenth Amendment claims. ECF No. 16.

Defendants answered the Complaint on June 10, 2020, ECF No. 20, and the case was referred to United States Magistrate Judge Mark W. Pedersen, for all pretrial matters excluding dispositive motions. ECF No. 21. On March 3, 2021, Defendants filed a motion for judgment on the pleadings, ECF No. 39, and after the Court appointed limited scope pro bono counsel, Plaintiff responded in opposition. ECF No. 44. Defendants timely replied. ECF No. 46.

In their initial motion, Defendants argue that Plaintiff failed to exhaust his claims and therefore, pursuant to the Prison Litigation Reform Act, the case must be dismissed. *See* ECF No. 39-2 at 4-5. In response, Plaintiff, through counsel, notes that the failure to exhaust is not a basis upon which the Court may grant a motion for judgment on the pleadings as it is not a jurisdictional issue, and that Plaintiff's Complaint includes assertions that his administrative remedies were, in

fact, exhausted. *See* ECF No. 44 at 5-9. Defendants, recognizing the error in asserting that exhaustion under the Prison Litigation Reform Act was grounds for dismissal, requested that the Court convert the motion to a motion for summary judgment and provide Plaintiff with proper notice. ECF No. 46 at 2. The Court agreed and entered a Decision and Order indicating that the motion would be construed as one for summary judgment and sent Plaintiff notice on October 13, 2021. ECF No. 48.

On October 22, 2021, Plaintiff filed an Objection to the Court's Decision and Order arguing that the Court should not have converted the pending motion into one for summary judgment because Defendants did not comply with the specific pleading requirements for a Rule 56 motion. ECF No. 49 at 2. More specifically, Plaintiff argued that Defendants' submission failed to include a statement of material facts. *Id.* Nevertheless, on November 8, 2021, Plaintiff filed his response. ECF No 50. In addition, on November 15, 2021, Plaintiff filed a Motion to Appoint Counsel. ECF No. 51.

For the reasons set forth below, the Motion for Summary Judgment, ECF No. 39, is GRANTED and Plaintiff's Complaint is DISMISSED. Because the Court was able to decide the motions on the submitted papers, including Plaintiff's counseled brief, Plaintiff's Motion to Appoint Counsel, ECF No. 51, is DENIED.

## BACKGROUND

At the times relevant to this claim, Plaintiff James Thomas was an inmate at Wende Correctional Facility ("Wende") in Alden, New York. ECF No. 1 at 1. On December 23, 2019, Plaintiff filed this Complaint against two correctional officers from Wende—J. Wood and J. Klepp. *Id.* On February 5, 2020, Plaintiff filed an Amended Complaint, again asserting claims against Wood and Klepp and adding claims against Deputy Superintendent K. Brown. ECF No.

10. This Court construed both complaints as being operative in its March 31, 2020 Order. ECF No. 16.

According to Plaintiff, on November 23, 2019, Defendant Wood allowed two inmates to enter Plaintiff's cell and assault him by cutting him in the head and face. ECF No. 1 at 5. Defendant Wood was allegedly aware of the violence and did not attempt to stop it. *Id.* Plaintiff indicates that he filed a grievance and appealed this claim. In particular, he alleges that he received no response after filing the initial grievance and wrote to the Superintendent and OSI. *Id.*

Then, on November 24, 2019, Plaintiff asserts that at 6:22 p.m. his cell gate was opened and another inmate entered and stabbed him in his face and head while Defendant Klepp and Defendant Wood watched. *Id.* at 6. Plaintiff was later taken to the hospital. *Id.* Plaintiff again indicates that he filed a grievance, appealed the claim, received no response, and wrote to the Superintendent and OSI. *Id.*

Sometime thereafter, Plaintiff was placed in the Special Housing Unit (the "SHU") where he spent 30 days. ECF No. 10 ¶ 7. During those 30 days, Plaintiff states that he "wrote over 6 [l]etter[s] to defendant that a hit has been put out on him." *Id.* ¶ 8. On December 23, 2019, Plaintiff filed this claim. *See* ECF No. 1.

On January 17, 2020, Plaintiff was released from SHU and placed in a housing block. ECF No. 10 ¶ 13. On January 29, 2020, Plaintiff was again assaulted. *Id.* ¶ 14. As a result, Plaintiff filed the amended complaint on February 5, 2020, containing such factual allegations. *Id.*

## DISCUSSION

### I. Conversion to Motion for Summary Judgment

A district court's "conversion of a Rule 12[c] motion into one for summary judgment is governed by principles of substance rather than form." *Hawkins v. GM Components Holdings*

*LLC*, 405 F. Supp. 3d 483, 485 (W.D.N.Y. 2019) (quoting *Sahu v. Union Carbide Corp.*, 548 F.3d 59, 67 (2d Cir. 2008) (quotations omitted)). Meaning, despite Plaintiff's objection, it is not necessary for the parties to submit a statement of material facts as required by the Local Rules of Civil Procedure for the Court to convert the instant motion into one for summary judgment. *Id.*; *see also, e.g.*, *G & A Books, Inc. v. Stern*, 770 F.2d 288, 295 (2d Cir. 1985) ("Even where only the party moving to dismiss has submitted extrinsic material such as depositions or affidavits, the opposing party may be deemed to have had adequate notice that the motion to dismiss would be converted."); *Bd. of Trs. of Teamsters Local 918 Pension Fund v. Freeburg & Freeburg, C.P.A.*, No. 98-CV-4895(SJ), 1999 WL 803895, at *4 (E.D.N.Y. Sept. 28, 1999) ("[I]n a motion to dismiss under 12(b)(6), where affidavits and exhibits in addition to the pleadings are presented to and not excluded by the court, the court must convert the 12(b)(6) motion into a motion for summary judgment." (collecting cases)). Regardless, Defendants filed a response to Plaintiff's statement of material facts indicating which factual assertions they agree with and which they do not. *See* ECF No. 52.

**II.     Motion for Summary Judgment**

    **A.     Legal Standard**

Summary judgment is appropriate when the record shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable

to the non-moving party and draws all reasonable inferences in the non-moving party's favor. *See Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005).

"The moving party bears the burden of showing the absence of a genuine dispute as to any material fact[.]" *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014). Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)). Specifically, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown*, 654 F.3d at 358. Indeed, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48.

B.  **Exhaustion**

Under the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The administrative exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). If an inmate fails to exhaust his administrative remedies, he is barred from commencing a federal lawsuit. *Martin v. Niagara Cty. Jail*, No. 05-CV-00868, 2012 WL 3230435, at *6 (W.D.N.Y. Aug. 6, 2012). In other words, to commence a lawsuit "prisoners must complete the administrative review process in accordance

with the applicable procedural rules—rules that are defined not by the PLRA, but by the prison grievance process itself." *Johnson v. Killian*, 680 F.3d 234, 238 (2d Cir. 2012) (internal quotations and citation omitted). Exhaustion necessitates "using all steps that the [government] agency holds out, and doing so properly." *Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (quoting *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)). To be "[p]roper," exhaustion must comply with all of the agency's "deadlines and other critical procedural rules." *Woodford*, 548 U.S. at 90-91.

To satisfy the PLRA's exhaustion requirement, an inmate in New York is generally required to follow the prescribed grievance procedure, which is set forth at 7 N.Y.C.R.R. § 701.5. The grievance process begins with filing a complaint within 21 days of the alleged incident. *Id.* at § 701.5(a)(1). Typically, inmates file the grievances directly with the grievance clerk.[1] *Id.* The inmate's administrative remedies consist of a three-step grievance and appeal procedure: (1) investigation and review of the grievance by the Inmate Grievance Resolution Committee ("IGRC"); (2) if appealed, review of the IGRC's determination by the superintendent of the facility; and (3) if the superintendent's decision is appealed, review and final administrative determination by the Central Office Review Committee ("CORC"). *See* § 701.5. All three steps of this procedure must ordinarily be exhausted before an inmate may commence suit in federal court. *See Morrison v. Parmele*, 892 F. Supp. 2d 485, 488 (W.D.N.Y. 2012).

However, the Supreme Court has identified several situations in which administrative remedies are deemed "unavailable": (1) when the procedure operates as a simple dead end, with officers consistently unwilling to provide any relief; (2) when an administrative scheme is so opaque that it becomes essentially incapable to use; and (3) when prison administrators prevent

---

[1] However, in situations where, as alleged here, the inmate is housed in the SHU, he may give the grievance complaint to a correction officer to file for him. *See* 7 N.Y.C.R.R. § 701.7.

6

inmates from using the grievance process.[2] *See Ross v. Blake*, 578 U.S. 632, 642-44 (2016) 136 S. Ct. 1850, 1859-60.

As an initial matter, to the extent Plaintiff is asserting a claim due to the alleged January 29, 2020 incident, his claim must be dismissed. Indeed, Plaintiff makes no allegation that he exhausted his administrative remedies or even began the administrative process as a result of the January 29, 2020 incident, nor does he assert that the administrative remedies were unavailable to him. Rather, Plaintiff alleges that he would have "more proof" of the incident once a hearing had taken place. *See* ECF No. 10 ¶ 15. It is unclear to this Court whether the alleged hearing was occurring in relation to a grievance that was filed due to this incident or for some other purpose. Therefore, Defendants' Motion for Summary Judgment for failure to exhaust concerning the January 29, 2020 incident is GRANTED as Plaintiff has provided no evidence or factual assertion from which the Court may find that a material question of fact exists.

Plaintiff's allegations regarding the grievances concerning the events that occurred on November 23, 2019 and November 24, 2019 are less clear. In his initial Complaint, ECF No. 1, Plaintiff asserts that he grieved the claims and further provides that after receiving no response, he wrote to the Superintendent and OSI. *See* ECF No. 1 at 5-6. In his Amended Complaint, Plaintiff asserts that he notified a defendant of his safety concerns and wrote over six letters to Defendant Brown "that a hit has been put out on him and that he needed PC[.]" ECF No. 10 ¶ 8. In opposition to the summary judgment motion, Plaintiff asserts in a conclusory manner that he submitted all necessary grievances to facility administration. ECF No. 50 at 2. He further argues that the

---

[2] Because the failure to exhaust is an affirmative defense, Defendants bear the initial burden of establishing that the grievance process exists and applies to the underlying dispute. *See Mojias v. Johnson*, 351 F.3d 606, 610 (2d Cir. 2003). If Defendants meet that burden, remedies may still be deemed unavailable if Plaintiff can demonstrate that other factors rendered the procedure unavailable as a matter of law. *Hemphill v. New York*, 280 F.3d 680, 688 (2d Cir. 2004).

absence of such grievances in the prison's file system demonstrates that exhaustion remedies were unavailable as the officials may have disposed of the grievances as a means of inconveniencing him. *Id.* at 3.

As an initial matter, the Court recognizes that the regulations provide that inmates in the SHU may file grievances by giving the complaint to a correction officer to forward to a grievance clerk and that courts have further found that the regulations do not sufficiently outline the process to appeal where a grievance is never filed. *See Williams v. Correction Officer Priatno*, 829 F.3d 118, 124 (2d Cir. 2016). Thus, where an inmate attempts to timely file a grievance by handing it to an officer while in the SHU and the officer fails to file the grievance, the inmate's avenues for pursuing the grievance would be deemed unavailable. *Id.*

However, those are not the circumstances that Plaintiff alleges here. While Plaintiff claims that during his time housed in the SHU he wrote various *letters* to Defendant Brown, he does not allege that the letters were grievances for alleged improper conduct or that they were not properly filed. Rather, Plaintiff expressly states that the letters informed Defendant Brown that a "hit" had been placed on him and requested he be placed in protective custody. ECF No. 50 at 10 ¶ 19 ("Thomas Decl."). Those requests were later denied. *See* ECF No. 10 ¶ 8, 11. At no point does Plaintiff assert that such letter requests also included complaints of the November 23, 2019 or November 24, 2019 misconduct, or that such letters were meant to be filed with the grievance clerk.[3] Indeed, letters cannot simply be treated as a "grievance." *See* 7 N.Y.C.R.R. § 701.2(a) ("A letter addressed to facility or central office staff is not a grievance."); *see, e.g.*, *Timmons v. Schriro*,

---

[3] Additionally, Plaintiff asserts that these letters were written during his 30 days in the SHU, which ended with a release on January 17, 2020. Thomas Decl. ¶ 11. Therefore, accepting Plaintiff's allegations as true, he was placed in the SHU sometime around December 18, 2019. The grievance process begins with filing a complaint within 21 days of the alleged incident. 7 N.Y.C.R.R. § 701.5(a)(1). December 15, 2019 is 21 days after the November 24, 2019. Thus, it is unclear to this Court whether a grievance filed while Plaintiff was in the SHU would even be rendered timely.

8

No. 14-CV-6606 RJS, 2015 WL 3901637, at *3 (S.D.N.Y. June 23, 2015) ("[T]he law is well-settled that informal means of communicating and pursuing a grievance, even with senior prison officials, are not sufficient under the PLRA."); *Muhammad v. Pico*, No. 02-CV-1052, 2003 WL 21792158, at *8 (S.D.N.Y. Aug. 5, 2003) ("District court decisions in this circuit have repeatedly held that complaint letters to the DOCS Commissioner or the facility Superintendent do not satisfy the PLRA's exhaustion requirements.") (footnote omitted).

In any event, Plaintiff continues to assert that he "submitted all necessary grievances to facility administration," ECF No. 50 at 2, and points to his own testimony in support, *see* Thomas Decl. ¶ 29. However, Plaintiff only alleges that after grievances went unanswered, he wrote letters to the Superintendent. Even assuming these letters could constitute grievance appeals under the regulations, Plaintiff does not assert he appealed or attempted to appeal through the CORC—a necessary step to exhaustion. *See* 7. N.Y.C.R.R. § 701.5(d); *Omaro v. Annucci*, 68 F. Supp. 3d 359, 364 (W.D.N.Y. 2014) ("It is well established that an inmate who does not appeal to CORC has failed to exhaust his administrative remedies."). Defendants, in fact, provide a certified printout of database results listing all grievances filed by Plaintiff while detained at Wende, which they argue demonstrates that no such grievance was filed concerning the events at issue here. ECF No. 39-1 at 6-8 ("Ex. A").

Nevertheless, Plaintiff maintains that Defendants' claim that no evidence of exhaustion exists is simply evidence of their own "mismanagement of records," Thomas Decl. ¶ 30, and creates a question of fact that must be resolved at a hearing. ECF No. 44 at 8 (relying on *Ortiz v. Annucci*, No. 17-CV-3620 (RJS), 2019 WL 1438006, at *9 (S.D.N.Y. Mar. 29, 2019)). However, the circumstances in *Ortiz v. Annucci* are easily distinguished from the circumstances present here. In *Ortiz*, the plaintiff claimed that he completed each step in the grievance process. Specifically,

9

the plaintiff asserted that while he was in the SHU he asked for a grievance form and was denied. *Ortiz*, 2019 WL 1438006 at *3. Following the denial, he wrote a grievance on plain stationery, made a contemporaneous copy, placed the original in an envelope addressed to the IGRC, and dropped it into a mailbox. *Id.* He claims that at that point, it was either thrown out or destroyed and never filed. *Id.* After failing to receive a response, plaintiff asserts he requested an appeal form and was again denied access. *Id.* Again, he wrote an appeal on plain stationery, made a contemporaneous copy, and sent the original to the grievance committee. *Id.* After receiving a response indicating that no initial grievance was received, Plaintiff appealed to CORC. *Id.* After no response was sent by CORC, he wrote a letter to the Governor, District Attorney, and Commissioner of DOCCS. *Id.*

In support of his satisfaction of the exhaustion requirement, the plaintiff in *Ortiz* pointed to his own testimony and copies of the grievance and appeal. *Id.* The defendants, on the other hand, relied on various declarations which attested that a records review failed to uncover any grievance or other documentation concerning the incident. *Id.* at *2.

In finding that plaintiff sufficiently demonstrated a genuine dispute of material fact existed, the court in *Ortiz* noted that the plaintiff not only relied on his own testimony but on a copy of the grievance itself. *Id.* at *9. Additionally, the court determined that plaintiff's theory that officers were interfering with his attempts to file grievances was further supported by the fact that the grievance was submitted on ordinary stationery and that the affidavits from fellow inmates indicated issues of harassment involving defendants and plaintiff were frequent. *Id.* Indeed, the court also found that defendants' evidence suggested the same—the absence of records of plaintiff's appeal demonstrated that officers failed to file the grievance or otherwise obstructed it. *Id.*

Though the Court does not diminish the severity of Plaintiff's allegations, the Court does not find that Plaintiff—even construing allegations in his favor—has supplied any evidence from which the Court may find a question of material facts exists. *Brown*, 654 F.3d at 358 (the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact"). Plaintiff does not point to any evidence other than his own conclusory testimony that all necessary grievances were filed. He makes no allegations that Defendants or other officers attempted to interfere with the grievance procedure. He does not claim that the letters provided to Defendant Brown contained complaints of misconduct or were meant to be filed with the grievance clerk. Instead, without any evidence or support, Plaintiff asserts that Defendants' lack of record demonstrates their own mismanagement of such. Thomas Decl. ¶ 30. It would be improper for this Court to alone rely on Plaintiff's conclusive assertion that he filed all necessary grievances without any factual support, and instead conclusively assert Defendants' mismanagement. Therefore, Defendant's Motion for Summary Judgment, ECF No. 39, is GRANTED.

## CONCLUSION

For the reasons discussed, Plaintiff's Motion to Appoint Counsel, ECF No. 51, is DENIED and Defendants' Motion for Summary Judgment, ECF No. 39, is GRANTED and Plaintiff's claims are DISMISSED. The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: December 8, 2021
      Rochester, New York

                                    HON. FRANK P. GERACI, JR.
                                    United States District Judge
                                    Western District of New York